THE CHICAGO, TEXAS & MEXICAN CENTRAL RAILWAY COMPANY ET AL. V. DANIEL TITTERINGTON AND WIFE

No. 3115.

1. **Construction of Deed.**—In the deed for right of way to appellant executed by appellees is the following recital: "That for and in consideration of the enhanced value to be given and is contemplated to arise to our lands and other property by the location and construction of the Chicago, Texas & Mexican Central Railway, and for the consideration of full and complete value accruing to us by this transaction, in locating and maintaining a station on the lands hereby granted, we," etc. The deed in terms conveyed in fee the right of way. *Held,* that the deed passed the land entirely out of the grantors and to the railway company. . It is in no

sense executory. A failure to locate or maintain a station might be ground for damages, but not for avoiding the deed. The stipulation for a station, etc., is a covenant, not a condition.

2. **Promises — Fraud.** — Ordinarily promises to perform some act in the future, although made by one party as a representation to induce the other to enter into a contract, will not amount to fraud in legal acceptation, although subsequently and without excuse broken. But our courts have recognized an exception, expressed with reference to this case as follows: If the railway company at the time it made the representations and promises did so with the design of cheating and defrauding the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if its conduct did have that effect, then such acts and declarations, coupled with its subsequent refusal to perform its promises, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded and the land restored to them.

3. **Same.—Practice.**—The intent with which promises, etc., made to obtain right of way were made when violated is for the jury, whether made with no intent to comply, etc. There being evidence to promises made plaintiffs which were disregarded, it was proper that the question of fraud be submitted to the jury.

4. **Privy Acknowledgment — Special Deputy Clerk.** — An acknowledgment was taken and certified in due form to a deed by husband and wife for a right of way through their homestead, community property. It was attacked because the privy acknowledgment was taken and certified by one signing himself "special deputy of the County Court," etc. *Held*, as deputy clerks of the County Courts are authorized to take and certify proof and acknowledgments to deeds, the addition of the word *special* in the certificate was immaterial, and did not affect the regularity of the privy acknowledgment.

5. **Easement Upon Homestead.** — The husband may grant license for right of way to a railway company over the homestead when it is community property, provided such right of way does not interfere with the wife's enjoyment of the homestead. 63 Texas, 586.

6. **Limitation—Suit to Avoid Deed for Fraud.**—Suit to avoid a deed on the ground of fraud is barred by limitation of four years. Rev. Stats., art. 3207.

7. **Same.** — Limitation ran from time plaintiffs discovered or might have known the railway company did not intend to establish or maintain a station as stipulated.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

Daniel Titterington and his wife brought this suit on the 20th day of June, 1887, against the appellants, to cancel and annul a certain deed to a right of way, made on April 16, 1881, upon the ground of fraud and failure of consideration, and on account of the alleged incapacity of the officer to take the privy acknowledgment of Mrs. Titterington to the deed. They also prayed for judgment for the land and for rents; and upon a verdict of the jury in their favor that character of judgment was rendered for them, but the damages were duly remitted, and the judgment now stands only for the possession of the land. The court submitted to the jury only the issue of fraud upon the part of the Chicago, Texas & Mexican Central Railway Company in procuring the deed originally, and in failing to erect a depot, as that company had agreed to do, upon the land of the appellees.

It appears that the land conveyed by the appellees to the railway company was a part of their homestead, and from the allegations in the petition it is to be presumed that the homestead was founded upon community property and not upon the separate land of the wife. No question is raised upon this point, and we shall assume that the homestead is community. The deed evidences a fully executed contract in so far as the conveyance of the title to the land is concerned, and contains no conditions expressly providing that the estate shall revert to the grantors or terminate in the event that the railway shall fail to perform its promises, which constituted the sole consideration for the deed.

The deed read in evidence by defendant, and under which it claimed title, was made by appellees to the Chicago, Texas & Mexican Central Railway Company, April 16, 1881, and recorded in the county of Dallas, April 23, 1881. This deed contained the following recital of consideration, viz.: "That for and in consideration of the enhanced value to be given and is contemplated to arise to our lands and other property by the location and construction of the Chicago, Texas & Mexican Central Railway, and for the consideration of full and complete value accruing to us by this transaction in locating and maintaining a station on the lands hereby granted, we," etc.

The testimony of a number of witnesses introduced by plaintiffs, and of which there was no contradiction, showed representations made to plaintiffs and others to the effect that the Chicago, Texas & Mexican Central Railway Company would not only erect its railway across the land, but would establish and maintain a passenger and freight depot thereon. These representations were made to the plaintiff Daniel Titterington, the railway company going so far as to plat a town or village on land adjacent to the right of way which had been contracted for with the plaintiff. No depot was ever built at the place indicated, and no attempt has ever been made to build one there. There is a switch, and trains stop when flagged, and freight cars are occasionally set out on the switch to be loaded or unloaded. There is no building and no station agent. The railway company went into possession of the strip of land in the spring of 1881, shortly after the grant, constructed its road thereon, and the same has been continuously since in its possession or the possession of the Gulf, Colorado & Santa Fe Railway Company, which is now operating the same. It was distinctly alleged in the petition of the plaintiffs, that the Chicago, Texas & Mexican Central Railway Company falsely and fraudulently represented to the plaintiffs before and at the time of the execution of the deed that said company would erect the depot, etc., as specified in the deed, and that these representations were made by said defendant for the sole purpose of cheating and deceiving the plaintiffs, and that the

representations so falsely and deceitfully made did in fact deceive them and induce them to make said deed, otherwise they would not have executed it at all, etc. The defendant interposed the statutes of limitation of two, four, and five years.

[This statement accompanied the opinion.]

*Leake, Shepard & Miller* and *J. W. Terry*, for appellants.—1. The deed is valid and passed the title to the railway company; because: (1) There was no fraud in its recitals. (2) The grant is not conditioned upon the performance by the railway company of its promise to build and maintain a depot on the land, and the title can not revert upon failure of the company to perform the promise contained in the consideration of the deed. (3) The only fraud, if any, shown by the evidence is in the failure of the defendants to perform the promise to build a depot, which was a part of the consideration for the deed. (4) The deed, therefore, is valid and conveyed the title, and the appellees' cause of action would be either to compel the performance of the promise to build a depot or for damages for failure to do so. Railway v. McKinney, 55 Texas, 176, 181; Stanley v. Colt, 5 Wall., 119; Ryan v. Porter, 61 Texas, 106; Meade v. Ballard, 7 Wall., 790; 2 Washb. on Real Prop., pp. 2–7; Packard v. Franklin, 16 Gray, 327; Rosson v. Uxbridge, 7 Allen, 125; Nichol v. Railway, 12 N. Y., 121; see p. 130, et seq.; Morrill v. Railway (Mo.), 9 S. W. Rep., 657; Mayer v. Swift, 73 Texas, 367; Adams' Eq., side p. 191; 1 Story Eq. Jur., sec., 138d; Id., secs. 693, 707.

2. The defendants having been in possession of the land from about April 16, 1881, the action of plaintiffs was barred by limitation of two, four, and five years. Railway v. Pape, 73 Texas, 501; Smith v. Fly, 24 Texas, 345.

*John Bookhout*, for appellees.—1. The court did not err in charging the jury on the issue of fraud. Hays v. Railway, 62 Texas, 397; Railway v. Pfeuffer, 56 Texas, 67; Railway v. McKinney, 55 Texas, 176; Railway v. Benitos, 59 Texas, 326; Railway v. Garrett, 52 Texas, 133.

2. The court did not err in refusing the charge upon the statute of limitations, as set forth in the assignments of error. J. M. Strong testified, that the land had been occupied by the Gulf, Colorado & Santa Fe Railway Company four or five years. Daniel Titterington testified, that the Chicago, Texas & Mexican Central Railway Company was in possession of the land and operated a railway over it perhaps two years. C. P. Gillespie, tax collector, says: "There is no assessment against the Chicago, Texas & Mexican Central Railway Company since 1882. No taxes have been paid by the Chicago, Texas & Mexican Central Railway Company on the land since 1882." Sayles' Civ. Stats., art. 3193; Murphy v. Welder, 58 Texas, 235; Railway v. Morris, 68 Texas, 49.

MARR, JUDGE, *Section A.*—Under the several assignments of error submitted by the appellants, it will be necessary to determine, first, whether in legal contemplation the deed from the appellees contains any condition of defeasance; second, the effect of the statutes of limitation upon plaintiffs' right of action, supposing that the deed was voidable only for fraud, and which will also involve the inquiry whether the representations which are relied upon to avoid the deed constitute *fraud* in legal acceptation; third, whether the officer who took the privy acknowledgment of the wife was competent to do so, and in this connection whether the deed would be void even without the acknowledgment of the wife, the property being community.

1. We have already sufficiently described the character and the terms of the deed in the statement of the case. We are of the opinion that the deed is in no sense executory, but that it passed the title to the land entirely out of the grantors and to the railway company. The appellees neglected to reserve any title in themselves, or to provide for the reversion of the estate in the event that the contract should be broken by the grantee. They have not attempted in this suit to recover damages and to charge the land with any lien in their favor. Howe v. Harding, 76 Texas, 23; Mayer v. Swift, 73 Texas, 367. Of course, the right to a lien would depend upon the subsisting right (not barred by limitation) to obtain a judgment for some sum of money; but this would not give the right to avoid the deed and defeat the title conveyed by it. It is very evident that the deed contains no condition precedent; nor do we think that the language used would indicate even a condition subsequent. This case is plainly different from Railway v. Dunman, 74 Texas, 265. There the deed expressly provided that the title should revert to the grantor in case of nonperformance upon the part of the grantee. Of course, in case of a condition subsequent broken, the grantor has his election to re-enter and reclaim the land or to sue for damages for a breach of the contract, and a suit for the land would be equivalent to a re-entry. Railway v. Dunman, supra.

But conditions of this character are not favored by the courts, and in case of doubtful language or intention the promise or obligation of the grantee will be construed to be a covenant limiting the grantor to an action thereon, and not a condition subsequent with the right to defeat the conveyance. Under the authorities, we think that it must be held, and we do hold, that the promises or obligations of the railway company referred to in the deed are in the nature of covenants, not conditions, and therefore the plaintiffs, aside from the other questions in the case, could not reclaim the land itself on account of the nonperformance of the covenants or promises by the grantee, but would be required to sue for the damages arising from the breach of the contract. Johnson v. Gurley, 52 Texas, 222; Mayer v. Swift, 73 Texas, 367; Chapin v. School District, 35 N. Y., 445; Baker v. Compton, 52

Texas, 252; 2 Cruise Dig., 2; 3 Knight, 120; Rawson v. Inhabitants, etc., 89 Mass., 125; Packard v. Franklin, 82 Mass., 327; Ins. Co. v. Mowry, 6 Otto, 548; Selden v. Pringle, 17 Barb. (N. Y.), 458; see also Ludlow v. Railway, 12 Barb., 440, though in that case a condition subsequent was expressly created.

It follows from what we have said, that the court below should have instructed the jury, as requested by the defendants, that the deed in question conveyed the title to the land to the railway company unconditionally, and therefore to find for the defendants; but the court should have added a qualification so as to submit the other issues in the case to the decision of the jury. The instruction as requested was too strong, as it ignored entirely the issue of fraud; but it was sufficient to call the attention of the court to the subject. The court gave no charge upon the effect of the deed at all.

2. This brings us to the consideration of the questions of fraud and limitation. It is contended by the appellants, that the plaintiffs' allegations of fraudulent representations do not show any fraud in legal contemplation, but only false promises to do something in the future for the nonperformance of which an action for damages might lie, or for specific performance, but would not give any legal ground for the rescission of the contract. No exception was interposed to the sufficiency of the allegations as formal averments of the fraud and of the facts constituting the same. We shall therefore consider the allegations as sufficient to show the character of the acts and representations relied upon as constituting fraud and as disclosing the intention of the parties at the time of the execution of the deed. We concede that ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is, without any excuse, entirely broken and nonfulfilled. This is a plain and well established proposition about which there can be no controversy; otherwise every breach of a contract would amount to fraud. Bigham v. Bigham, 57 Texas, 238; 8 Am. and Eng. Encyc. of Law, p. 637, note 1. To the above rule, however, we think that there is a well founded exception, though there is a conflict in the authorities upon the question. It has been distinctly recognized and announced by the Supreme Court, however, in this State. The exception may be stated as follows, and in reference to the case in hand: If the railway company at the time it made the representations and promises before mentioned to the plaintiffs, did so with the design of cheating and deceiving the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if its conduct did have that effect, then we think that such acts and declarations, coupled with its subsequent utter failure and refusal to perform the

promises or assurances, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded and the land restored to them. But upon the other hand, if the promises or representations were made in good faith at the time of the contract, and the defendant subsequently changed its mind and failed or refused to perform the promises, then such conduct of the company, originally or subsequently, would not constitute such fraud in legal acceptation as would justify the rescission of the contract or the cancellation of the deed. We rest our decision upon the following authorities, beginning with the decision of our own Supreme Court in an analogous case, which is directly in point, and in principle can not be distinguished from the present controversy: Henderson v. Railway, 17 Texas, 560; Dowd v. Tucker, 41 Conn., 203; Wilson v. Eggleston, 27 Mich., 257; Gross v. McKee, 53 Miss., 536; 2 Scott, 588. Whether the intention to cheat and defraud existed at the time of the making of the contract was a question of fact for the jury, and they might well have inferred that the railway company in fact had no intention at that time of establishing the depot on the plaintiffs' land, from the fact that thereafter it did not even make a pretense of complying with the contract in this particular. Dowd v. Tucker, supra. The court, therefore, did not, in our opinion, err in submitting the question of fraud to the jury.

The next inquiry in order is, Was the statute of limitation applicable as a defense to the action? The court, although requested so to do by the defendants, refused to submit this issue. If the action should be regarded as a suit for land, then we think limitation would be inapplicable, notwithstanding the defendants may have used the land as a right of way for more than five years and paid the taxes thereon, because the character of the possession and claim would not constitute such adverse possession as would give title to the fee. If the defendants failed to establish the right to the easement the plaintiffs could recover the land. Hays v. Railway, 62 Texas, 397. But the legal character of the suit will depend upon the further question of whether or not the deed was absolutely void or only voidable. The specific statute of limitation of four years can not be invoked in this case, as is evident from its terms (Rev. Stats., art. 3205); nor will the general statute prescribing that period apply if the suit is one for the "recovery of real estate;" hence the necessity for determining the character of this action. Rev. Stats., art. 3207. Of course the deed in question would only be voidable for fraud.

We deem it appropriate to determine at this point in the investigation the effect of this deed as a conveyance of an interest in the homestead of the appellees. The privy acknowledgment of the wife was taken in due form, but the officer signed himself as "special deputy clerk" of the County Court, after he had duly signed his principal's name. This is the only defect, if that be one. We think that if the

officer was a deputy clerk (as will be presumed in the absence of any countervailing proof) the mere fact that he prefixed to his official signature the word "special" will not vitiate his acts.   But however this may be, it is the settled law in this State that the husband alone may convey a part of a community homestead to a railway company for a right of way, provided such conveyance does not operate to interfere with the enjoyment of the homestead by the wife.   It was shown that the right of way does not in this instance disturb the homestead right or use.   Randall v. Railway, 63 Texas, 586.   We conclude for this reason that the deed in question was not void.   The deed not being void, it would seem to follow that the suit should not be considered as an action to recover land.   Prima facie the deed conveys the title to the land, and the title remains in the grantee unless the deed is set aside for fraud or other adequate cause for avoiding the contract.

We think that the primary purpose of the present suit is to cancel the deed upon the ground of fraud, and though a judgment for the land itself is asked, still, if this prayer should be granted, it would be rather as a result of the other relief which must first be granted than as the purpose for which the suit was brought.   The land could not be recovered without first attacking directly and annulling the deed for fraud. That was the main purpose of the suit and fixes the character of the action.   The action is personal, and is entirely predicated upon the right to vacate the deed.

We think that the general statute of limitations of four years should have been given in charge by the court.   Rev. Stats., art. 3207.   See cases infra.   Limitation commenced from the time when the plaintiffs discovered or ought to have discovered by the exercise of proper diligence and inquiry under the circumstances, that the railway company did not intend to erect the depot upon their land.   Fraud prevents the operation of limitation only so long as it remains undiscovered.   Calhoun v. Burton, 64 Texas, 516, and cases cited; 70 Texas, 327.   That the statute of limitation of four years applies to actions like the present has been expressly decided in two cases, and perhaps in others. Cooper v. Lee, 75 Texas, 114; Shirley v. Railway, 78 Texas, 147.   As the land is not the separate property of Mrs. Titterington, her disability would not exclude limitation.   Roemer v. Meyer, 17 S. W. Rep., 597.

The defendants also set up this statute by special exception, which was overruled; but there is no assignment of error presenting this ruling for revision.   If the exception should be renewed upon another trial, it should be sustained.   Cooper v. Lee, supra, and cases cited. The instruction as requested by the defendants and refused by the court was couched in such language as to take the question entirely from the jury.   Still, it should have been given with a proper qualification by the court in accordance with the views which we have expressed, so that the jury should have been permitted to determine the issue under

the law and the evidence.    It is not so evident from the testimony that plaintiffs' action is barred that the court should have instructed the jury to find for the defendants upon that issue as a matter of law, although, as we have seen, the court might have held this upon the demurrer to the petition.

The refusal· of the court to charge upon the subject of limitation is assigned as error, and we think that the assignment is well taken.

On account of the errors before indicated, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 26, 1892.