**N. R. C., INC., et al., Appellants,**

v.

**Phil HUCKABEE et ux., Appellees.**

**No. 12455.**

Court of Civil Appeals of Texas, Austin.

July 14, 1976.

Rehearing Denied Aug. 18, 1976.

Barry Bishop, Clark, Thomas, Winters & Shapiro, Austin, for appellants.

Samuel D. McDaniel, Austin, for appellees.

SHANNON, Justice.

Appellees, Phil Huckabee, and wife, Hazel D. Huckabee, sued appellants, N.R.C., Inc., National Homes Construction Corporation, and National Homes Corporation, in the district court of Travis County. By their suit appellees sought the rescission and cancellation of a "contract for deed" to a parcel of land which appellees purchased from appellants. After trial to a jury, the district court entered judgment rescinding the contract and ordering appellants to return the sum of $10,592.63 paid by appellees pursuant to the contract. We will reverse that judgment.

Although they pleaded several grounds for rescission and cancellation, appellees elected to submit their case upon theories of (1) fraud and (2) violation of 15 U.S.C. 1701 et seq. (1968), the "Interstate Land Sales Act."

The facts were that appellants invited appellees to view their real estate development, "Lago Vista." Appellees visited Lago Vista in August, 1972. The lot which interested appellees, and for which they ultimately contracted, was situated on a rocky hillside overlooking Lake Travis. During their visit appellees saw several modular houses built by appellants and a sales brochure displaying those houses.

Appellee Hazel Huckabee testified that appellants' salesman discussed with them the location of a particular house plan, termed the "Granada," on a natural "shelf" site on the upper side of the lot. The salesman assured appellees that a "Granada" style house could be located on the shelf. The salesman also showed appellees item "sixteen" of the property report, filed with the United States Department of Housing and Urban Development, which stated that no special foundation work would be necessary to construct a one-story

residential structure in the subdivision. Mrs. Huckabee testified further that the salesman satisfied them that appellants could build the house on the lot. Appellees entered into the contract to purchase the property before they departed Lago Vista.

In response to a letter from appellees, appellants wrote appellees on April 13, 1973, in an effort to induce appellees to enter into a building contract. Appellants' letter read as follows:

"Thank you for your recent inquiry concerning the building of our 'Granada' on lot 3152. This is a very beautiful plan, which includes approximately $1600.00 in custom-built cabinets.

"It would be impossible to say exactly what the final cost would be, as that is controlled a great deal by the treatment given to your interior and exterior finish. "I can give you a range at this time of between $39,500.00 and $42,500.00. The time of construction would be between 90 and 120 days, from the day we start construction.

"If you would like more specific information, please contact me directly."

Upon trial, the case was submitted to the jury by seven special issues. With respect to the special issues submitting appellees' theory of fraud, the jury answered that appellants' salesman represented to appellees that the lot was suitable for the construction of a modular residence on that part of the lot which appellees selected; that appellees relied upon the representation in entering into the contract; and that the representation was false. Apropos appellees' ground of recovery based upon the violation of the Interstate Land Sales Act, the jury answered that special foundation work was necessary in order to build the modular residential home on the lot, and that appellees became aware of the necessity for the special foundation work in June, 1974. The jury responded further that the representation concerning no need for special foundation work was a material inducement to appellees entering into the contract and that appellees relied upon that representation.

Appellants have three points of error concerning appellees' ground for rescission based upon appellants' alleged fraud. Point of error two is that the salesman's representation does not support the remedy of rescission. We agree.

There were two representations which probably could have formed the basis for appellees' suit for fraud. The first was the salesman's assurance that appellants could, and would, build a Granada model house on the desired location. The second representation was contained in the letter quoted above which stated that appellants would build the house on the lot for about $39,500 to $42,500.

Both representations were promises of future action. Even so, fraud can be premised upon a promise of future action when accompanied by a present intention not to perform. *Stanfield v. O'Boyle,* 462 S.W.2d 270 (Tex.1971), *Chicago, T. & M. C. Ry. Co. v. Titterington,* 84 Tex. 218, 19 S.W. 472 (1892). We have read the statement of facts, and it contains no evidence that appellants did not intend to perform at the time the representations were made.

The right to rescission, based upon the appellants' alleged violation of the Interstate Land Sales Act, is the subject of appellants' remaining points of error. Section 1709(a) of that Act provides a cause of action to a purchaser of a lot in a subdivision if the required property report contains an untrue statement of a material fact.

As previously written, appellants, in answer to a question in the "H.U.D." property report, had responded that no "special foundation work" on the land would be necessary in connection with the construction of a one-story residence. The jury's answer to special issue four was that "special foundation work" would be necessary to construct the Granada model house on the lot. Point of error four is that the jury's answer was supported by no evidence. Appellants' position is that the answer of the jury to special issue number four was legally immaterial.

The term, "special foundation work," is not defined in the H.U.D. property report,

and according to the parties, no definition of that phrase is contained in the Rules and Regulations of the Office of Interstate Land Sales Registration.

Appellants argue that the term "special foundation work" means more than adjusting the surface of the lot to permit a flat foundation or floor, or making a flat floor by using pier and beams, because this type of ground preparation exists in every construction effort designed to produce a flat floor on a surface that is not already absolutely flat. Appellants maintain that "special foundation work" must necessarily refer to and contemplate more than a lot which is not level, and must refer to some unusual soil condition not apparent to the viewer, such as a swamp or fault line, rather than merely to a hillside lot. We agree with appellants' argument, and we sustain point of error four.

The judgment is reversed and judgment is here rendered that appellees take nothing.

Reversed and Rendered.